**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID DECAPUA, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>METLIFE, INC.,<br><br>        Defendant, | Case No.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. § 227 *ET SEQ*. (TELEPHONE CONSUMER PROTECTION ACT)**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff David DeCapua (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

**NATURE OF ACTION**

1. This case involves a scheme by Metlife, Inc. ("Metlife") (by and through its employees and/or agents) to market its services through the use of automated text messages in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

2. As described more fully below, Metlife has issued a high volume of insurance quotes – and made substantial sales of products and services – derived through illegal telemarketing texts that it, its employees, and/or its agents sent out on its behalf.

3. Metlife violated the TCPA by contacting Plaintiffs and Class Members on their cellular telephones for non-emergency purposes via an "automatic telephone dialing system" as

defined by 47 U.S.C. § 227(a)(1), without their prior express written consent within the meaning of the TCPA.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a national class, which will result in at least one Class member from a different state.

5. This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq.*

6. This Court has personal jurisdiction over Metlife because the company is licensed to conduct the business of insurance in the State of New York and because Metlife's corporate headquarters are located in New York. It therefore has established minimum contacts showing it has purposefully availed itself to the resources and protection of the State of New York. The text messages that are the subject of this case were made on behalf of, and for the purpose of benefitting, Metlife.

7. Venue is proper in the United States District Court for the Southern District of New York because defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, and because Metlife's contacts with this District are sufficient to subject it to personal jurisdiction.

## PARTIES

8. Plaintiff David DeCapua is, and at all times mentioned herein was, an individual citizen of the State of Ohio, who resides in Columbus, Ohio.

9.  Metlife, Inc. is a Delaware corporation with its corporate headquarters in New York.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

**The TCPA and Its Purpose**

10.  In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

11.  The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Included within the definition of "calls" made using an autodialer are automated text messages sent in bulk using an automated process.[2] In other words, a text is a call for purposes of the TCPA.

12.  Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express written consent of the called party.

13.  According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*
[2] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003) ("2003 FCC Declaratory Ruling").
[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

**The Limited Prior Express Written Consent Exception**

15. The FCC has defined prior express written consent in 47 C.F.R. § 64.1200(f)(8) as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

16. Under the TCPA, the burden is on the seller – here, Metlife – to have obtained and documented prior express written consent before calls were made.

**Liability for Telemarketing Calls under the TCPA**

17. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* FCC Declaratory Ruling, Memorandum and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995).

18. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[4]

19. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 F.C.C.R. at 6586 (¶ 34).

---

[4] *In the Matter of The Joint Petition Filed by DISH Network, LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules, et al.*, CG Docket No. 11-50, 28 F.C.C.R. 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

20. The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at n.107.

21. The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information. " *Id.* at 6592-93 (¶ 46).

**Autodialers under the TCPA**

22. The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B).

23. In 2003, the FCC issued an order finding, among other things, "that a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress."[5] The 2003 FCC order defined a predictive dialer as "an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call."[6] The FCC concluded that "[t]he basic function of such equipment . . . [is] the capacity to dial numbers without human intervention."[7]

24. The 2008 Declaratory Ruling "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[8]

---

[5] *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, 14,093 (2003).
[6] *Id.* at 14,143 n. 31.
[7] *Id.* at 14,092.
[8] 23 FCC Rcd. at 566.

25. And in yet another order issued in 2012, the FCC again reiterated that the TCPA's definition of an ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists."[9] In 2018, a decision struck down portions of a 2015 FCC Order, but "the prior FCC Orders are still binding."[10]

## FACTUAL ALLEGATIONS

### Facts Related to Plaintiff

26. Plaintiff is, and at all times mentioned herein, was, a "person," as defined by 47 U.S.C. § 153(39).

27. On July 19, 2018, on or about 12 p.m. EDT, Plaintiff received a text message on his cell phone stating:

> Hi David, is your home properly insured?  METLIFE offers 100% replacement cost.  Let us help find the right coverage for you.  Text SECURITY to 313131 or call 614-527-4980 visit https://clk2.me/QuVVa 2end msgs reply STOP

28. In order to identify the source of the message, Plaintiff called the 614-527-4980 telephone number, and was connected to Rick Lee, a Metlife agent and/or employee in Hilliard, Ohio.[11] Plaintiff spoke to Mr. Lee's assistant, who confirmed that his agency sent the text message.

29. In addition, Mr. Lee's assistant informed Plaintiff that Metlife had obtained his contact information from a marketing firm, Colex Data that mines public information for potential contacts that meet a particular set of criteria.  Armed with that information, Metlife,

---

[9] *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 15391, 15399 (2012).
[10] *See, e.g., Reyes v. BCA Fin. Servs., Inc.*, Case No. 16-24077-CIV, 2018 WL 2220417, at *11 (S.D. Fla. May 14, 2018).
[11] https://agents.metlife.com/richard-lee/

through its employee and/or agent Mr. Lee, contracted with a third-party, EZ Texting (which is owned by or affiliated with a company called CallFire), which sent out as many as 8,000 text messages on behalf of Metlife during the week of July 16 alone.

30. Prior to receiving the text message, Plaintiff had no contact with Mr. Lee, his firm, or Metlife.  At no point did Plaintiff provide prior express written consent, or any other kind of consent, to receive telemarketing messages from Mr. Lee or Metlife.

31. Therefore, Metlife and its employees and/or agents engage in a consistent pattern and practice of sending text messages to potential customers for the purpose of soliciting home insurance via third-party robo-texting services.  These messages are sent without first obtaining, or even attempting to obtain, the prior express written consent that is required under the TCPA.

**Respondeat Superior**

32. Metlife is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39)/

33. Upon information and belief, Mr. Lee and other property insurance agents of Metlife are direct employees of the Metlife.  For example, in a recent job posting, Metlife notes that its "Sales Representatives are outside insurance agents who provide Personal and Commercial lines Property & Casualty policies, as well as Life Insurance policies, to their communities."  Moreover, in that same job posting, Metlife touts the fact that "MetLife Sales Representatives are W2 employees who are eligible to participate in a comprehensive benefits package including a variety of insurance plans, 401k & pension plans, as well as generous paid time off."[12]

---

[12] See https://www.glassdoor.com/job-listing/property-casualty-sales-agent-metlife-JV_IC1148399_KO0,29_KE30,37.htm?jl=2838387784&ctt=1532350910277 (last accessed July 26, 2018).

34. As such, Metlife is liable for the statutory violations and torts of its employees who acts within the scope of their employment. *Riviello v. Waldron*, 47 N.Y.2d 297, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (N.Y. 1979). "The purpose of the rule is to render the employer responsible, in proper cases, for the employee's tortious acts, which although errant, were done in furtherance of the employer's business." *Rausman v. Baugh,* 248 A.D.2d 8, 10, 682 N.Y.S.2d 42 (N.Y. App. Div. 1998).

35. Metlife retains employees/agents for the purpose of soliciting and facilitating the writing of insurance and/or providing other financial products to individuals and businesses. As such, telemarketing efforts such as the one that resulted in the illegal robotext to Plaintiff, which seek to bring in additional insurance customers, are squarely within the scope of the agent's/employee's employment by Metlife.

36. Metlife's employees/agents retained third-party texting services to send telemarketing messages to Plaintiff and other class members using an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), to contact potential new customers on their cellular telephones.

37. The telephone number that the third-party texting services, acting on behalf of Metlife, called to contact Plaintiff made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

38. Plaintiff did not provide his "prior express written consent" allowing Metlife or its employees or agents to send text messages to Plaintiff's cellular phone using by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

39. Metlife and its employees/agents did not send text messages to Plaintiff's cellular phone "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

40. The text message sent to Plaintiff's cellular phone placed by an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiff's prior express written consent, violated 47 U.S.C. § 227(b)(1)(A). Specifically, the equipment used by and/or on behalf of Metlife had the present capacity to store, produce, and/or dial telephone numbers randomly and/or sequentially. In addition, Metlife uses a predictive dialer within the meaning of the FCC's 2003, 2008, and/or 2012 orders.

41. As the employer of Metlife's agents acting within the scope of their authority as employees, Metlife is responsible for their agents' violations of the TCPA as set forth above.

42. Under the TCPA, the burden is on Metlife to demonstrate that Plaintiff and Class members provided their prior express written consent within the meaning of the statute.[13]

43. MetLife and its employees/agents acted willfully, knowingly, and without regard to the TCPA when it initiated the calls described herein.

**Apparent Authority**

44. In the alternative, if Metlife's agents are determined to be independent contractors rather than employees, then, upon information and belief, Metlife oversees and controls its agents' actions generally, but particularly with respect to telemarketing.

45. The text message clearly and unambiguously stated that the insurance services offered would be provided by Metlife. Thus, upon information and belief, the agent had authority to use the Metlife's "trade name, trademark and service mark[s]," as discussed in the May 2013 FCC Ruling. As such, the agent is an apparent agent of Metlife.

---

[13] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

46.     By hiring and endorsing the hiring of third party texting services to send text messages on behalf of its agents to generate sales leads, Metlife "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.  Similarly, by accepting these contacts, the Metlife agents "manifest[ed] assent or otherwise consent[ed]  . . . to act" on behalf of Metlife, as described in the Restatement (Third) of Agency.  As such, Metlife's agents are indeed "agents" of Metlife.

**Ratification**

47.     In the alternative, Metlife repeatedly ratified its agents' illegal telemarketing campaigns by knowingly accepting the benefits of these activities when Metlife accepted business derived therefrom.

48.     Metlife is aware, or should have been aware, that text messages were sent to individuals who had not provided written consent to receive telemarketing, and any reasonable person would have been aware of the illegal telemarketing alleged herein, under these circumstances. Upon information and belief, Metlife knew or should have known that texts were being sent using an "automatic telephone dialing system" to generate these leads, when Metlife accepted business deriving from such texts.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

50.     Plaintiff brings this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Class") pursuant to Federal Rule of Civil Procedure 23.

51.     Plaintiff proposes the following Class definition, subject to amendment as appropriate:

>All persons within the United States who received a non-emergency text message on or after August 13, 2014. sent by MetLife employee/agent Rick Lee or his office,, advertising insurance products or services to be provided by Metlife.

Collectively, all these persons will be referred to as "Class members." Plaintiff represents, and is a member of, the Class.

52. Excluded from the Class are Metlife, and any entities in which Metlife has a controlling interest; Metlife's agents and/or employees; any Judge to whom this action is assigned and any member of such Judge's staff and immediate family; claims for personal injury, wrongful death and/or emotional distress.

53. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members to number, at minimum, in the thousands.

54. Plaintiff and all members of the Class have been harmed by the acts of the Metlife, because their privacy has been violated, they were subject to annoying and harassing texts that constitute a nuisance, they temporarily lost legitimate use of their cell phones in having to deal with the texts, and they were charged for incoming texts.

55. This Class Action Complaint seeks injunctive relief and money damages.

56. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

57. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

58. Further, the Class can be identified through records maintained by Metlife, its employees and/or agents, and/or the third party texting service.

59. There are well defined, nearly identical, questions of law and fact affecting all parties.

60. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

61. Such common questions of law and fact include, but are not limited to, the following:

    a. Whether the third-party texting services, acting on behalf of Metlife, used an automatic telephone dialing system in sending non-emergency text messages to Plaintiff and Class members;

    b. Whether Metlife can meet its burden of showing it obtained and possessed prior express written consent (*i.e.*, written consent that is clearly and unmistakably stated), to make such texts before such texts were made;

    c. Whether Metlife's conduct was knowing and/or willful;

    d. Whether Metlife is liable for statutory damages; and

    e. Whether Metlife should be enjoined from engaging in such conduct in the future.

62. As persons who received non-emergency texts from an automatic telephone dialing system, without their prior express written consent within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member who also received such texts.

63. Further, Plaintiff will fairly and adequately represent and protect the interests of the Class.

64. Plaintiff has no interests which are antagonistic to any member of the Class.

65. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

66. A class action is the superior method for the fair and efficient adjudication of this controversy.

67. Classwide relief is essential to compel Metlife to comply with the TCPA.

68. The interest of the Class members in individually pursuing claims against Metlife is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter Metlife from engaging in the same behavior in the future.

69. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the texts at issue are all automated and the Class members, by definition, did not provide the prior express written consent required under the statute to authorize such texts to their cellular telephones.

70. Metlife has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

71. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### FIRST COUNT

### STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ.*

72. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

73. The foregoing acts and omissions of Metlife constitutes numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

74. As a result of Metlife's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

75. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Metlife's violation of the TCPA in the future.

76. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## SECOND COUNT

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ*.

77. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

78. The foregoing acts and omissions of Metlife constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

79. As a result of the Metlife's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

80. Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Metlife in the future.

81. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Metlife:

A. Injunctive relief prohibiting such violations of the TCPA by Metlife in the future;

B. As a result of Metlife's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA;

C. As a result of Metlife's statutory violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500 in statutory damages for each and every text that violated the TCPA;

D. An award of reasonable attorneys' fees and costs to counsel for Plaintiff and the Class, to be paid from the common fund judgment;

E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

F. Such other relief as the Court deems just and proper.

signature block

Dated: August 14, 2018

Respectfully submitted,

By: _____

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Jonathan D. Selbin (JS3097)
Email: jselbin@lchb.com
John T. Nicolaou (JN7612)
Email: jnicolaou@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson (*pro hac vice to be submitted*)
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

MEYER WILSON CO., LPA
Matthew R. Wilson (*pro hac vice to be submitted*)
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice to be submitted*)
Email: mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

*Attorneys for Plaintiff and the Proposed Class*

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts so triable.

Dated: August 14, 2018

Respectfully submitted,

By: _____

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Jonathan D. Selbin (JS3097)
Email: jselbin@lchb.com
John T. Nicolaou (JN7612)
Email: jnicolaou@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson (*pro hac vice to be submitted*)
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

MEYER WILSON CO., LPA
Matthew R. Wilson (*pro hac vice to be submitted*)
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice to be submitted*)
Email: mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

*Attorneys for Plaintiff and the Proposed Class*